BARRY J. PORTMAN
Federal Public Defender
LARA S. VINNARD
Assistant Federal Public Defender
160 West Santa Clara Street, Suite 575
San Jose, CA 95113
Telephone: (408) 291-7753

Counsel for Defendant VU

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>v.<br><br>KHANH DANG VU,<br><br>            Defendant. | No. CR 07-00566 JF<br><br>**DEFENDANT KHANH VU'S<br>SENTENCING MEMORANDUM**<br><br>Date: April 23, 2008<br>Time: 9:00 a.m.<br>Honorable Jeremy Fogel |

## INTRODUCTION

Defendant Khanh Vu, who just turned 25 years old, came to the United States with his parents and siblings as an immigrant from Vietnam. After a brush with the law as a teenager, his family sent him to live with friends in Oregon, where he completed high school. Over the past several years, as a young adult, he made several attempts to support himself through gainful employment. Last year, however, he exercised extremely poor judgment and turned to criminal conduct – selling the club drug "ecstacy" – as a source of income. He has no prior convictions and he has expressed sincere remorse for his conduct. He has been compliant with all conditions of pretrial release while residing with his older brother, Khoa Vu.

Pursuant to the parties' Rule 11(c)(1)(B) plea agreement, the parties have stipulated that the appropriate Adjusted Offense Level is 19 and the Criminal History Category is I. There is no

limiting language in the plea agreement requiring Mr. Vu to agree that the guideline range is reasonable, and thus Mr. Vu is permitted to seek a below-guidelines sentence. Accordingly, on several grounds, the defense requests that the Court impose a sentence of one year and one day.

Mr. Vu also requests that the Court make several recommendations to the Bureau of Prisons. First, Mr. Vu is very interested in participating in the BOP's Residential Drug and Alcohol Program, and requests that the Court recommend that he be placed in the RDAP program. Second, given Mr. Vu's lack of criminal history, his compliance with pretrial release, and his lack of experience with imprisonment, the defense further requests that the Court recommend placement in a camp facility. Third, the defense requests that the Court recommend placement either in Oregon or California, both of which have facilities with RDAP programs, in order to facilitate family visits.

I. **THE COMPONENTS OF A REASONABLE SENTENCE**

*United States v. Booker*, 543 U.S. 220 (2005), directs the sentencing court to impose an appropriate sentence, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. Under the post-*Booker* discretionary sentencing regime, there is no longer any question that the advisory Guideline range is only one factor among several that this Court is required to consider in determining what constitutes a reasonable sentence. The Court is free to disagree with Guideline ranges and policy considerations. *See Kimbrough v. United States*, 128 S.Ct. 558, 57 (2007). The district court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007). Moreover, the Ninth Circuit has declined to adopt an appellate presumption of reasonableness for a within-guideline sentence. *United States v. Carty*, __ F.3d __, 2008 WL 763770, Slip Op. at *1.

Nor is the district court required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences. *Gall v. United States*, 128 S.Ct. 586, 596 (2007). Rather, it must exercise "reasoned sentencing judgment, resting upon an effort to filter the

1  Guidelines' general advice through § 3553(a)'s list of factors." *Rita*, 127 S.Ct. at 2469.

2  Sentencing discretion, therefore, is not a hollow term of art. The courts of appeal are
3  limited to reviewing sentences for abuse of discretion and may not presume that a sentence which
4  may be much lower than that suggested by the Guidelines is unreasonable. *Gall*, 128 S.Ct. at
5  597.

6  18 U.S.C. § 3553(a), the wellspring from which a reasonable sentence must be drawn,
7  "contains an overarching provision," *see Kimbrough*, 128 S.Ct. at 570, directing the district court
8  to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the
9  purposes of sentencing. Section § 3553(a) (emphasis added). Those purposes include the need:

10  •    to provide just punishment;
11  •    to create adequate deterrence;
12  •    to protect the public; and
13  •    to provide the defendant with necessary treatment and training.

14  Section 3553(a)(2). Section 3553(a) further directs sentencing courts to consider, *inter alia*, (1)
15  the nature and circumstances of the offense and the history and characteristics of the defendant;
16  (3) the kinds of sentences available; and (6) the need to avoid unwanted sentencing disparities
17  among defendants with similar records who have been found guilty of similar conduct. §
18  3553(a).

19  In sum, "th[e] mandatory system [embodied in § 3553(b)] is no longer an open choice."
20  *Booker*, 543 U.S. at 263. Instead, the district court's duty is to impose the least amount of time
21  necessary to achieve § 3553(a)'s purposes. The Guidelines range is subordinate to that duty.

22  **II.    MR. VU SHOULD RECEIVE A SENTENCE OF ONE YEAR AND ONE DAY**

23  The Probation Office has placed Mr. Vu in Criminal History Category I, with an adjusted
24  Offense Level of 19, resulting in a sentencing range of 30 to 37 months. Both the government
25  and the Probation Office recommend that the Court impose a sentence at the low end of that
26  range – 30 months. For several reasons, the Court should impose a below-guideline, mitigated

sentence of one year and one day. Such a sentence would constitute just punishment, would create adequate deterrence, and would be sufficient to protect the public in light of Mr. Vu's personal characteristics and the nature of his offense. Such a sentence would also take into account the kinds of sentences available for comparable offenses in state court.

### A. Mr. Vu's Conduct in this Case was Aberrant, and His Personal Characteristics Warrant a Mitigated Sentence

Mr. Vu's personal characteristics warrant a mitigated sentence in this case. Prior to this offense, Mr. Vu generally lived a law-abiding life. He has no prior convictions, and his only prior police contact was for drug use as a teenager.[1] The letters from his family, submitted herewith, outline Mr. Vu's work ethic; his commitment to his family; and their extreme disappointment once they learned about his conduct in this case. Mr. Vu himself has expressed sincere remorse regarding his criminal conduct, stating, "Selling ecstacy in my case is the wrong thing to do. Drugs are harmful to people. At the time I was not working, and only saw it as a way to make money." Statement of Mr. Vu, PSR ¶16, attached hereto as Exhibit A.

As a child, Mr. Vu moved to the United States with his family, because his parents hoped to provide a better life for their children than was available in Vietnam. *See* Letter of Khoa Vu, Exhibit B. Mr. Vu's parents attempted to instill good values in all of their children. *Id*. Although Mr. Vu's criminal conduct in this case reflects that he did not fully learn those lessons, it must be noted that he did finish high school and then attempted to support himself for several years as a young adult before he found an alternate, unlawful, way to make money.

During the pendency of this case, Mr. Vu has been residing with his older brother, Khoa

---

[1] With respect to aberrant conduct, the Court may consider the criteria outlined in U.S.S.G. § 5K2.20, which requires that the conduct: (1) did not involve significant planning, (2) was of limited duration, and (3) represented a marked deviation from a law-abiding life. The only factor which is arguably not met in this case is "lack of significant planning," because there were at least two meetings between Mr. Vu and the CI, as well as several phone calls. However, post-*Booker*, the Court is not limited to the specific departure criteria identified in the Sentencing Guidelines, and may consider this aspect of the case in arriving at a reasonable sentence.

Vu. Their time living together has given Khoa an opportunity to observe Mr. Vu's work ethic. Mr. Vu was working at a furniture store until it went out of business a few months ago. As Khoa Vu states,

> He used to work at a furniture store, managing the business for the boss. He did everything from sales to delivering furniture to the customers' houses. I've had a chance to work with him on a few weekends to help out. What I have observed and learned from Khanh was that he has a very positive and optimistic personality. Even though the business wasn't going well, he still gave it his one hundred percent. He's also a very hard worker and a responsible person. When his boss was on maternity leave, he took over the store and managed every aspect of it.

Letter of Khoa Vu, Exhibit B.

Khoa Vu also describes Mr. Vu's close relationship with his family. As he states:

> Back at home, he's also had the effect of being an uplifting person to the family. He would always say optimistic things to light up the family, no matter what situation we are in. He's also very caring to the other two siblings. He would often take them out to eat and drive them places on the weekends.

Letter of Khoa Vu, Exhibit B.

Both Khoa Vu and Mr. Vu's father express disappointment regarding Mr. Vu's involvement with drugs in this case. Both family members also note that Mr. Vu made poor choices by becoming involved with substance abuse and negative influences as a teenager. They believe that he has succumbed to the same influences in this case. As his father summarizes:

> As a child growing up, Khanh was an obedient kid, a loyal friend to his friends and a caring brother to his siblings. He hung out with nice and fun loving kids, unfortunately when he was in high school he started to hang out with the wrong people. We didn't know any better; we were too concerned with trying to make ends meet and put food on the table. However, we fail to realize that our children, especially Khanh, need more than financial support. They also need their parents to have an open communication channel and provide emotional support when needed. When we found out Khanh was using drugs and had a run in with the law, we were devastated and very worried for his future.
> So my wife and I did everything we could to bring Khanh out of a bad environment and negative influences by moving the entire family to Oregon.[2] We were

---

[2] In reviewing the letters submitted by Mr. Vu's family, undersigned counsel noted a detail regarding Mr. Vu's residential history in Oregon that may have been poorly explained to the Probation Officer during the probation interview. As reported in the PSR, Mr. Vu moved to Oregon by himself and lived with family friends while he completed high school. PSR ¶38. In the letters submitted by his family, undersigned counsel noted an apparent discrepancy, because they describe a move to Oregon by the "entire family." Undersigned counsel has spoken with

DEF. SENT. MEM
No. CR 07-00566 JF                    5

extremely happy when he was able to graduate from high school. We had more hope for him and wanted him to complete a four year college degree. We felt that with his intelligence and positive attitude, he can achieve great things in life. But his passion for his friends and a care free lifestyle has led him to this situation today.

Letter of Thuong Vu (translated and written with assistance from Khoa Vu), Exhibit C.

Mr. Vu himself is ashamed of his conduct, and recognizes that he has disappointed his family. As he states, "My family has been very sad and disappointed in me for doing this. . . . I feel sad and disappointed that I let them down, and sad that I will be away from them for a while. I accept responsibility for my action. I will learn from my mistake." PSR ¶16.

In short, Mr. Vu is a young man from a close-knit, immigrant family who cares for him. He has no prior criminal convictions, and he engaged in criminal conduct over a short period of time in order to make money. Mr. Vu's arrest and prosecution brought an end to a very short-lived criminal venture, and have already had the desired effect of impressing upon Mr. Vu the importance of law-abiding behavior.

The Court should consider the aberrant nature of his conduct as well as his lack of experience with the prison system to impose a reasonable sentence of one year and one day. Such a sentence would be a significant punitive consequence for Mr. Vu, who has never been to prison, and served only two days in jail in this case, and would be adequate to serve all the purposes of punishment.

**B.    The Only Aggravating Factor in the Case, the Amount of Drugs, was Determined by the DEA Informant**

The only aggravating factor in this case appears to be the amount of ecstacy involved. However, it must be noted that Mr. Vu himself did not suggest the amount. Rather, the amount was determined by the DEA informant, who specifically requested 5,000 pills. PSR ¶10.

Moreover, although the number of pills was large, they were analyzed by the DEA and

---

Mr. Vu's brother, who clarified that initially, Mr. Vu did move to Oregon by himself and lived with family friends until he completed high school. Subsequently, the rest of Mr. Vu's family also relocated to Oregon, and Mr. Vu lived with them for several years, until he moved to Illinois. After that, the family moved back to San Jose.

were found to be of very low purity. The larger batch contained pills that were approximately 10.6% pure ecstacy, and the smaller batch contained pills that were approximately 12.4% pure. *See* Lab Report, Exhibit D.

### C. A Sentence of One Year and One Day is Commensurate with Sentencing Options Available in State Court, and is More than Adequate to Deter Future Violations of Law

In determining a reasonable sentence in this case, the Court should consider the issue of federal-state sentencing disparity, because in state court, Mr. Vu would be subject to a more lenient sentencing range, and would be eligible for probation.

In state court, the comparable statute for distribution of ecstacy would be California Health & Safety Code § 11378. That statute does not specify the sentence to be imposed upon conviction, but instead states that a defendant convicted under the statute "shall be punished by imprisonment in the state prison." Cal. Health & Safety Code § 11378. Because the statute does not specify a specific term of imprisonment, the default sentencing triad (16 months, two years, or three years) is applicable. Cal. Penal Code § 18; *see also United States v. Hernandez-Castillo*, 449 F.3d 1127 (10th Cir. 2006) ("Under the California Penal Code, an unspecified prison term in state prison may be for 16 months or two or three years. *Id*. § 18."). In addition, the sentencing court would have the option to impose probation and a shorter jail term rather than a prison sentence. Cal. Penal Code § 18 ("every offense which is prescribed by any law of the state to be a felony punishable by imprisonment in any of the state prisons or by a fine, but without an alternate sentence to the county jail, may be punishable by imprisonment in the county jail not exceeding one year or by a fine, or by both"). The factors to be considered in deciding whether to impose a sentence of probation rather than imprisonment are set forth in California Rules of Court, Rule 4.414.[3] Those factors include many that would weigh in favor of probation in Mr.

---

[3] California Rule of Court 4.414 directs the court to consider facts related to the crime as well as the defendant. Facts relating to the crime include: "(1) The nature, seriousness, and circumstances of the crime as compared to other instances of the same crime; (2) Whether the defendant was armed with or used a weapon; . . . (4) Whether the defendant inflicted physical or emotional injury; . . . (6) Whether the defendant was an active or a passive participant; . . . (8)

Vu's case, including his youth and lack of criminal history. There appear to be only two factors that weigh against probation, which are the amount of drugs involved and the fact that he was an active participant.

In attempting to conduct a survey of sentences imposed in California state court for sale of ecstacy, the defense was able to locate only one relevant published case, *People v. Nazem*, 51 Cal.App.4th 1225 (Cal. Ct. App. 1996). In that case, the defendant received a sentence of three years of probation and six months in jail. *Id*. at 1228-29. He received this lenient sentence despite the fact that he possessed a "large quantity" of ecstacy, a loaded handgun, brass knuckles, and sales paraphernalia. *Id*. at 1228.

Undersigned counsel also contacted members of the Santa Clara County Public Defender's Office in order to address this issue.[4] They stated that a defendant convicted of distribution of ecstacy in state court would be probation-eligible unless he was subject to a quantity enhancement (which would not appear to apply in this case); and if the court did not impose probation, he would be subject to sentencing options of 16 months, two years, or three years. In assessing the sentence to be imposed, they indicated that Mr. Vu's youth and lack of a

---

Whether the manner in which the crime was carried out demonstrated criminal sophistication or professionalism on the part of the defendant." Most of these aggravating factors are not applicable in Mr. Vu's case.

Facts relating to the defendant include: "(1) Prior record of criminal conduct, whether as an adult or a juvenile, including the recency and frequency of prior crimes; and whether the prior record indicates a pattern of regular or increasingly serious criminal conduct; (2) Prior performance on probation or parole and present probation or parole status; (3) Willingness to comply with the terms of probation; (4) Ability to comply with reasonable terms of probation as indicated by the defendant's age, education, health, mental faculties, history of alcohol or other substance abuse, family background and ties, employment and military service history, and other relevant factors; (5) The likely effect of imprisonment on the defendant and his or her dependents; (6) The adverse collateral consequences on the defendant's life resulting from the felony conviction; (7) Whether the defendant is remorseful; and (8) The likelihood that if not imprisoned the defendant will be a danger to others." Most of these factors are either not applicable, or support a grant of probation.

[4] Undersigned counsel spoke with Deputy Public Defenders Bishara Endrawos and Gregg Shores.

criminal history would be mitigating factors, while the amount of drugs would be an aggravating factor.

Mr. Vu is essentially a first offender. In federal court, following application of safety valve, he is eligible for a sentence of 30 months. In state court, on the same facts, he would be eligible for a mid-term sentence of two years; possibly a mitigated term of 16 months; or possibly even probation and a short jail term. The Court should consider the comparable penalties in state court in imposing a reasonable sentence in this case, and should conclude that a sentence of one year and one day would be appropriate.

### D. The Court Should Recommend RDAP and Camp Placement

Finally, as is reflected in the PSR as well as the letters from Mr. Vu's family, Mr. Vu's difficulties in the past have been connected with his poor choice of friends and his substance abuse. Mr. Vu would like the opportunity to participate in the Bureau of Prisons' RDAP program in order to avoid succumbing to negative influences in the future. Additionally, because Mr. Vu has no criminal history and has been compliant with all conditions of pretrial release, the defense requests that the Court recommend that he be housed in a camp facility, and that he be housed either in California or Oregon.

### CONCLUSION

For the foregoing reasons, the defense respectfully requests that the Court impose a sentence of one year and one day. The defense further requests that the Court recommend that Mr. Vu be allowed to participate in the BOP's RDAP program, and requests that the Court recommend placement in a camp facility in either California or Oregon.

Date: April 16, 2008

                                          Respectfully submitted,

                                          BARRY J. PORTMAN
                                          Federal Public Defender

                                          /s/

                                          LARA S. VINNARD
                                          Assistant Federal Public Defender